FILED

at ___O'clock &___min.___M

MAR 2 9 2005

BRENDA K. ARGOE, CLERK
United States Bankruptcy Court
Columbia, South Carolina (37)

# IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF SOUTH CAROLINA

|  |  |
|---|---|
| IN RE: | C/A No. 04-12501 |
| Michael L. Bridges and Esther M. Bridges, | Chapter 13 |
| Debtors. | ORDER |

**ENTERED**

MAR 2 9 2005

**D. H. R.**

THIS MATTER comes before the Court upon the Chapter 13 Trustee's Petition to Dismiss Case with Prejudice (the "Petition") and the response filed by Michael L. Bridges and Esther M. Bridges (collectively, the "Debtors"). After considering the arguments of the parties and the evidence presented, the Court makes the following Findings of Fact and Conclusions of Law pursuant to Federal Rule of Civil Procedure 52, applicable in bankruptcy proceedings by Federal Rule of Bankruptcy Procedure 7052.[1]

## FINDINGS OF FACT

1.      Debtors are the principals of Bridges Oil, Co. ("Bridges Oil"), a subchapter S corporation. As principals of Bridges Oil, Debtors personally guaranteed payment of many of Bridges Oil's debts.

2.      On October 24, 2003, Bridges Oil filed a voluntary Chapter 11 bankruptcy petition (C/A No. 03-13356). During the administration of Bridges Oil's Chapter 11 case, the Court converted the case to one under Chapter 7.

3.      On November 17, 2003, Debtors filed their first Chapter 13 case (C/A No. 03-14472).

---

[1]      The Court notes that to the extent any of the following Findings of Fact constitute Conclusions of Law, they are adopted as such, and to the extent any Conclusions of Law constitute Findings of Fact, they are so adopted.

4.    On January 29, 2004, the Chapter 13 Trustee filed a Motion to Dismiss Debtors' case because Debtors' noncontingent, liquidated unsecured claims exceeded the jurisdictional limits for a Chapter 13 filing under 11 U.S.C. § 109(e).[2] Debtors exceeded the jurisdictional limits because the aggregate amount of Bridges Oil debts that Debtors guaranteed exceeded the jurisdictional limits for noncontingent, liquidated unsecured debts prescribed by § 109(e) at that time.

5.    On May 17, 2004, the Court dismissed Debtors' first Chapter 13 case because their unsecured, nonpriority debts exceeded the jurisdictional limits.

6.    As a result of the dismissal, Debtors filed a Chapter 7 case (C/A No. 04-06851) on July 10, 2004.

7.    In the Chapter 7 case, Debtors listed $2,100,834.95 in unsecured, nonpriority debts on their schedules. Debtors' guaranty obligations for Bridges Oil debts comprised a majority of the unsecured debts.

8.    The Court entered a discharge order and closed Debtors' Chapter 7 case on September 21, 2004.

9.    After the close of their Chapter 7 case, Debtors filed a second Chapter 13 case (C/A No. 04-12501) on October 19, 2004. In the second Chapter 13 case, Debtors only list $196,367.58 in secured debt and $32,126.89 in unsecured priority debts on their schedules. State[3] and federal corporate tax liabilities comprise most of the unsecured priority debts.

10.    The Chapter 13 Trustee filed the Petition on November 22, 2004. In the Petition, the Chapter 13 Trustee contends that the Court should dismiss Debtors' second Chapter 13 case

---

[2]    Hereafter, the Court shall refer to provisions of the Bankruptcy Code by section number only.
[3]    On December 10, 2004, the South Carolina Department of Revenue and Taxation filed an objection the Debtors' Chapter 13 plan. The Debtors and the South Carolina Department of Revenue and Taxation have apparently resolved their issues by settlement.

with prejudice for 180 days because (1) Debtors have had a previous Chapter 13 filing dismissed within one year of filing their second case; (2) Debtors are unable to show a change in circumstances that would justify a re-filing under Chapter 13; and (3) Debtors' third filing represents bad faith and constitutes unreasonable delay that is prejudicial to creditors.

11.    Debtors contend that they have not filed their second Chapter 13 case in bad faith; and thus, the Court should not dismiss it. Furthermore, Debtors note that their "Chapter 20"[4] filing is not a *per se* indication of a lack of good faith that warrants dismissal of their second Chapter 13 case.

12.    Prior to the hearing, the parties narrowed the issue to whether the sequential filing of a Chapter 13 case shortly after the completion of a Chapter 7 case, which discharged unsecured debts in an amount that would have disqualified the debtors from filing Chapter 13 originally because the debts exceeded the jurisdictional limits imposed by 11 U.S.C. § 109(e), constitutes bad faith that justifies denial of confirmation.

## CONCLUSIONS OF LAW

The Chapter 13 Trustee alleges that Debtors' second Chapter 13 filing following the discharge of all noncontingent, unsecured debts in their previous Chapter 7 case is a bad faith filing *per se* because it is an attempt to circumvent the jurisdictional limits of § 109(e). Accordingly, the critical issue the Court must address is whether Debtors' Chapter 20 filing following the dismissal of a prior Chapter 13 case for exceeding the jurisdictional limits of § 109(e) is a bad faith filing *per se*.

---

[4]    "Chapter 20" is commonly known as the process by which a bankruptcy debtor files a Chapter 7 case and thereafter files a Chapter 13 case. See In re Taylor, 261 B.R. 877, 883 (Bankr. E.D. Va. 2001) (recognizing that a debtor's sequential filing of a Chapter 7 petition and then a Chapter 13 petition is "the so-called 'Chapter 20'"); In re Cushman, 217 B.R. 470, 476 (Bankr. E.D. Va. 1998) (noting that a "Chapter 20 case" involves a "Chapter 13 case brought while the ink on debtor's Chapter 7 discharge is just barely dry.").

## I.   **PERMISSIBILITY OF CHAPTER 20 FILINGS**

Generally, Chapter 20 filings are procedurally proper under the Bankruptcy Code.

See Johnson v. Home State Bank, 501 U.S. 78, 87 (1991) (holding "Congress did not intend

categorically to foreclose the benefit of Chapter 13 reorganization to a debtor who

previously has filed for Chapter 7 relief."). In Johnson, the Court held as follows:

> Congress has expressly prohibited various forms of serial filings. See, *e.g.,* 11
> U.S.C. § 109(g) (no filings within 180 days of dismissal); § 727(a)(8) (no
> Chapter 7 filing within six years of a Chapter 7 or Chapter 11 filing); §
> 727(a)(9) (limitation on Chapter 7 filing within six years of Chapter 12 or
> Chapter 13 filing). The absence of a like prohibition on serial filings of
> Chapter 7 and Chapter 13 petitions, combined with the evident care with
> which Congress fashioned these express prohibitions, convinces us that
> Congress did not intend categorically to foreclose the benefit of Chapter 13
> reorganization to a debtor who previously has filed for Chapter 7 relief.

501 U.S. at 87. Other courts, including this Court, have addressed the propriety of Chapter

20 filings in varying contexts. See In re Scruggs, 320 B.R. 94 (Bankr. D.S.C. 2004) (noting

that the United States Supreme Court "refused to adopt a  per se rule prohibiting 'serial

Chapter 20 filings'"); In re Virello, 236 B.R. 199, 206 (Bankr. D.S.C. 1999) (noting that

there is no per se rule against successive Chapter 7 and Chapter 13 filings); In re Jarman,

C/A No. 91-01227-B, slip op. at 4 (Bankr. D.S.C. May 21, 1991)("While this court is wary

of Chapter 20 filings, the Court will not adopt a per se ruling barring the filing of Chapter 20

cases for bad faith filings."). See also In re Taylor, 261 B.R. 877, 883 (Bankr. E.D. Va.

2001) (citing Johnson and other bankruptcy cases).

Even though there is no express prohibition upon the filing of a Chapter 13 petition

on the heels of a Chapter 7 discharge, the Chapter 13 plan still must withstand the

confirmation standards of § 1325, which includes the requirement that the plan be filed in

good faith. See, e.g., Johnson, 501 U.S. at 87-88 (discussing the applicability of § 1325

4

protections and court's equitable powers to Chapter 20 filings); <u>Taylor</u>, 261 B.R. at 883-84

(good faith analysis is necessary with Chapter 20 filings); <u>In re Cowan</u>, 235 B.R. 912, 919

(Bankr. W.D. Mo. 1999) (same).

## II.    GOOD FAITH STANDARDS AND ADDITIONAL FACTORS

Section 1325(a)(3) of the Bankruptcy Code requires debtors to propose a Chapter 13

plan in "good faith and not by any means forbidden by law." 11 U.S.C. § 1325(a)(3).

Debtors have the burden of proving by a preponderance of the evidence that this plan meets

the confirmation requirements of § 1325(a), including the good faith requirement of §

1325(a)(3). <u>In re Marett</u>, No. 96-75003-W, 1996 WL 33340790, at *7 (Bankr. D.S.C. Nov.

13, 1996). In <u>Deans v. O'Donnell</u>, the Fourth Circuit held that determining whether a debtor

proposed a Chapter 13 plan in good faith required examination of the "totality of the

circumstances" on a case-by-case basis. 692 F.2d 968, 972 (4th Cir. 1982). The Fourth

Circuit also provided a non-exhaustive list of some factors that courts may consider. These

factors are (1) percentage of proposed repayment, (2) debtor's financial situation, (3) the

period of time payment will be made, (4) debtor's employment history and prospects, (5) the

nature and amount of unsecured claims, (6) debtor's past bankruptcy filings, (7) debtor's

honesty in representing facts, (8) the nature of debtor's pre-petition conduct that gave rise to

the case, (9) whether the debts would be dischargeable in a Chapter 7 proceeding, and (10)

any other unusual or exceptional problems the debtor faces. <u>Solomon v. Cosby (In re</u>

<u>Solomon)</u>, 67 F.3d 1128, 1134 (4th Cir. 1995) (citing <u>Deans v. O'Donnell, 692 F.2d 968,</u>

<u>972 (4th Cir. 1982)</u>; factors expounded upon in <u>Neufeld v. Freeman</u>, 794 F.2d 149, 152 (4th

Cir. 1986)).

In the context of a Chapter 20 filing, courts also consider additional factors: (1) the proximity in time of the Chapter 13 filing to the Chapter 7 filing; (2) whether the debtor has incurred some change in circumstances between the filings that suggests a second filing was appropriate and that the debtor will be able to comply with the terms of a Chapter 13 plan; (3) whether the two filings accomplish a result that is not permitted under either chapter standing alone; and (4) whether the two filings treat creditors in a fundamentally fair and equitable manner or whether they are an attempt to manipulate the bankruptcy system or are an abuse of the purpose and spirit of the Bankruptcy Code. In re Cushman, 217 B.R. 470, 477 (Bankr. E.D. Va. 1998). See also Taylor, 261 B.R. at 884-85) (applying factors); In re Waters, 227 B.R. 784 (W.D. Va. 1998) (same); In re Cowan, 235 B.R. at 919 (citing to Cushman as a concise summary of "a number of tests used to determine good faith" in the context of simultaneous Chapter 7 and Chapter 13 filings). Examination of these additional factors appears to be designed to distinguish between proper and improper Chapter 20 filings.

Accordingly, the test for determining which sequential filings are proper is considered by analyzing the traditional good faith standards enunciated in Deans and Neufeld, as well as by additional factors utilized in the context of a Chapter 20. See In re Solomon, 67 F.3d at 1134 (noting that court should consider relevant factors in its § 1325(a)(3) analysis of debtor's plan, mindful of the fact that the good faith inquiry is intended to prevent abuse of the provisions, purpose, or spirit of Chapter 13).

A.    Application of Traditional Good Faith Factors

Although the Court weighs all of the applicable factors to be considered under the totality of the circumstances, the Court will discuss the factors that it finds particularly

6

relevant to this matter.[5] According to their proposed plan, Debtors intend to fully repay all their secured creditors and priority, unsecured creditors, and Debtors' financial situation indicates that they have the ability to repay creditors in a meaningful manner under their proposed Chapter 13 plan. Further, Debtors intend to fully repay their remaining creditors within the five-year time period established for Chapter 13 cases. The Court also notes that there is no evidence in the record of Debtors' prior Chapter 7 case and this current case that would indicate a lack of candor with the Court. Debtors' pre-petition conduct demonstrated a willingness to repay creditors because they attempted to initially file a Chapter 13 case, but they were foreclosed from doing so as a result of the jurisdictional limits of § 109(e). Finally, although the claims treated in Debtors' Chapter 13 plan could not be discharged in a Chapter 7, their remaining debts are not the product of fraud, deceit, neglect or any other malfeasance as contemplated by 11 U.S.C. § 727, and will be fully repaid under Debtors' plan. The Court has considered the remaining factors and finds that, under the totality of the circumstances, all of these factors weigh in favor of Debtors.

---

[5]    As previously noted, the traditional good faith test in this Circuit includes a consideration of the following factors:

(1) percentage of proposed repayment,
(2) debtor's financial situation,
(3) the period of time payment will be made,
(4) debtor's employment history and prospects,
(5) the nature and amount of unsecured claims,
(6) debtor's past bankruptcy filings,
(7) debtor's honesty in representing facts,
(8) the nature of debtor's pre-petition conduct that gave rise to the case,
(9) whether the debts would be dischargeable in a Chapter 7 proceeding, and
(10) any other unusual or exceptional problems the debtor faces.

Solomon, 67 F.3d at 1134 (citing Deans, 692 F.2d 968; Neufeld, 794 F.2d 149).

B.            Additional Factors

In order to determine whether this Chapter 20 case is a *per se* bad faith filing, the Court will also consider additional factors often considered to distinguish between proper and improper Chapter 20 filings. Cushman, 217 B.R. at 477.[6]

1.      Proximity in Time of Debtors' Chapter 7 and Chapter 13 Filing

The Chapter 13 Trustee contends that Debtors filed their Chapter 13 case less than thirty (30) days after their Chapter 7 case concluded. The short period between the close of Debtors' Chapter 7 case and the filing of their second Chapter 13 case is a factor that weighs in favor of the Chapter 13 Trustee. However, the short time period between the conclusion of Debtors' Chapter 7 case and their Chapter 13 filing alone does not indicate that Debtors' failed to file their Chapter 13 plan in good faith.

2.      Debtors' Change in Circumstances

The Chapter 13 Trustee also argues that other than meeting the jurisdictional requirement of § 109(e) after receiving a discharge in their Chapter 7 case, Debtors have not experienced a change in circumstances that suggests they will be able to comply with a Chapter 13 plan. However, the discharge that Debtors achieved in their Chapter 7 case and the reorganization of Debtors' business, Bridges Oil, constitutes a change in circumstances in the context of the facts attendant in this case. By discharging their noncontingent unsecured debts, the majority of which consisted of guaranty obligations to repay debts incurred by Bridges Oil, Debtors financial standing has changed and they now appear to

---

[6]         As previously noted, these factors include: (1) the proximity in time of the Chapter 13 filing to the Chapter 7 filing; (2) whether the debtor has incurred some change in circumstances between the filings that suggests a second filing was appropriate and that the debtor will be able to comply with the terms of a Chapter 13 plan; (3) whether the two filings accomplish a result that is not permitted under either Chapter standing alone; and (4) whether the two filings treat creditors in a fundamentally fair and equitable manner or whether they are an attempt to manipulate the bankruptcy system or are an abuse of the purpose and spirit of the Bankruptcy Code. The Court notes that the Chapter 13 Trustee narrowly focused his legal grounds for dismissal of Debtors' case upon these additional factors.

have the ability to provide 100% repayment of their secured debts and priority federal and state tax claims.  Furthermore, Debtors' source of livelihood appears more stable and dependable inasmuch as the scale of Bridges Oil's operations and indebtedness since the conclusion of its Chapter 7 case has been reduced.  Therefore, the facts of this case indicate that Debtors have experienced a change in circumstances that suggests they will be able to comply with the terms of their Chapter 13 plan.

3.    Whether Debtors' Two Filings Accomplish an Impermissible Result

The Chapter 13 Trustee also contends that discharging, in a Chapter 7 case, noncontingent, liquidated unsecured claims that exceed the jurisdictional limits of § 109(e) in order to allow Debtors to treat remaining claims in a subsequent Chapter 13 case would render § 109(e) meaningless.  He also asserts that the Chapter 20 filing would impermissibly allow Debtors to (1) remain in control of property of the estate, (2) receive a superdischarge under Chapter 13, and (3) avoid making any meaningful payment to unsecured creditors.  The Court disagrees to the extent the Chapter 13 Trustee's argument is tantamount to a *per se* presumption of bad faith for any Chapter 20 filing where a debtor would not have met the jurisdictional requirements for a Chapter 13 case absent the filing of a Chapter 7.

First, the Court must recognize the Supreme Court's holding that Chapter 20 filings are procedurally proper under the provisions of the Bankruptcy Code.  Johnson v. Home State Bank, 501 U.S. 78, 87 (1991) ("Congress did not intend categorically to foreclose the benefit of Chapter 13 reorganization to a debtor who previously has filed for Chapter 7 relief.")

Second, Debtor's initial attempt to file a Chapter 13 and the dismissal of that case due to the jurisdictional mandates of § 109(e) is a factor that weighs in favor of the Debtors.

The purpose of Chapter 13 is to enable debtors "under court supervision, and protection, to develop and perform under a plan for the repayment of his debts over an extended period of time." Deans, 692 F.2d at 971. Because the jurisdictional limits of § 109(e) prevented Debtors from pursuing reorganization in their first Chapter 13 filing, Debtors were forced to pursue reorganization, if at all, under Chapter 7 or Chapter 11; a result that § 109(e) intended to preserve. In this case, Debtors were foreclosed from the remedies of Chapter 13 without first discharging some of their debts in a Chapter 7 case. Debtors' utilization of a Chapter 20 filing in order to meet the jurisdictional limits of § 109(e) and reorganize remaining debts after receiving a discharge in a Chapter 7 case has been recognized as a legitimate purpose. See In re Cushman, 217 B.R. at 476 n.10 (noting that one of the "perfectly legitimate reasons" for filing a Chapter 20 case is that a debtor may exceed the jurisdictional limit for non-contingent, liquidated unsecured debt). Therefore, the Court concludes that in light of the facts of Debtors' case, Debtors' Chapter 20 filing was not an improper attempt to circumvent the jurisdictional limits established by § 109(e).[7] In re Whitehead, 61 B.R. 397, 400 (Bankr. D. Or. 1986) (finding that debtors filed their plan in good faith despite having to file a Chapter 7 case before filing a Chapter 13 case because they did not satisfy the jurisdictional limits of § 109(e)).

Finally, the Court also notes that by filing a Chapter 7 case, Debtors were forced to make all their non-exempt property available to the Chapter 7 Trustee for liquidation.[8] In that case, however, Debtors did not possess sufficient non-exempt property that the Chapter

---

[7]    In In re Jarman, C/A No. 91-01227, slip op. (Bankr. D.S.C. 1991), a case issued prior to the Supreme Court's decision in Johnson v. Home State Bank, the Court found that debtor's attempt to utilize a Chapter 20 filing in order to meet the jurisdictional limits for a Chapter 13 filing was indicia of bad faith. However, in light of the Supreme Court's subsequent holding in Johnson and the recent developments of Chapter 20 case law within the Fourth Circuit, the Court finds In re Jarman. Furthermore, In re Jarman is distinguishable from this case because the debtor in Jarman was in arrears on his payments to the Chapter 13 Trustee.

[8]    The Court also notes that there is no evidence indicating that Debtors have failed to be forthright on their schedule of assets and exempt property.

7 Trustee could liquidate in order to make even a nominal payment to unsecured creditors.
Nevertheless, Debtors have made their non-exempt assets available to the Chapter 7 Trustee
and appear to have cooperated with the administration of their Chapter 7 case. In the
absence of any evidence indicating that Debtors concealed assets or committed any other
acts indicating a lack of candor with the Court, Debtors appear to have made an honest effort
to pay claims in order to complete their Chapter 7 case and obtain a discharge. Moreover,
Debtors' Chapter 7 discharge did not affect their remaining priority, unsecured tax claims
and secured claims. Therefore, at the conclusion of their Chapter 7 case, Debtors' only
method of effectively reorganizing those claims and providing full payment in an efficient
and affordable manner was to address the claims in a Chapter 13 plan. Accordingly,
Debtors' Chapter 20 filing does not appear to achieve a result that is not expressly permitted
by the separate provisions of Chapter 7 and Chapter 13 of the Bankruptcy Code.

> 4.    Is Debtors' Chapter 20 Filing Fair to Creditors or an Abuse of the
>       Bankruptcy Code

The Chapter 13 Trustee asserts that Debtors' Chapter 20 filing does not treat
creditors in a fundamentally fair and equitable manner because Debtors' Chapter 20 filing
would allow Debtors to discharge unsecured, non-priority creditors' claims, and allow
Debtors to avoid making any meaningful repayment. However, under the liquidation test
prescribed by § 1325(a)(4), Debtors' Chapter 20 filing has not materially prejudiced non-
priority, unsecured creditors because, as previously discussed, Debtors did not possess
sufficient non-exempt property to provide a nominal payment to such creditors in their
Chapter 7 case.

Debtors' secured creditors and priority, unsecured creditors will receive full payment
of their claims over the life of Debtors' Chapter 13 plan. Additionally, the Court finds it

significant that Debtors are committing a substantial portion of disposable income to their

Chapter 13 plan.  See In re Cowan, 235 B.R. at 919 (noting that debtors' contributing all of

their disposable income to their Chapter 13 plan was a significant indicator of good faith in a

Chapter 20 filing).  The Chapter 13 Trustee does not dispute that Debtors intend to commit

such income.  Furthermore, Debtors' secured creditors and priority, unsecured creditors

have not objected to Debtors' treatment of their claims under their proposed plan; thus,

Debtors' second Chapter 13 filing does not appear to materially prejudice these creditors.[9]

In this case, however, there is no evidence indicating that Debtors have concealed

assets or failed to be fully candid with the Court.  In light of such findings, Debtors' Chapter

20 filing treats creditors in a fair and equitable manner.

## III.   CONCLUSION

Debtors initially attempted to address all their debts in a Chapter 13 case, but were

foreclosed from doing so because their unsecured debts exceeded the jurisdictional limits of

§ 109(e).  As a result of their inability to file for Chapter 13 relief, Debtors filed for relief

under Chapter 7 of the bankruptcy code.  The record of their Chapter 7 case indicates that

Debtors fully disclosed their assets, cooperated with the Chapter 7 Trustee, and were

forthright with the Court.  After receiving a discharge and following the close of their

Chapter 7 case, Debtors filed this Chapter 13 case in order to commit all of their disposable

income to the plan and fully pay all remaining claims; an acceptable result contemplated by

---

[9]        Recently this Court has held that under certain circumstances, Chapter 20 filings may be prohibited if
they are filed in order to prejudice and delay creditors when debtors have failed to maintain obligations that
they have voluntary undertaken during the course of their initial Chapter 7 bankruptcy case.  In re Scruggs, 320
B.R. 94 (Bankr. D.S.C. 2004).  In Scruggs, the Court dismissed the debtors' Chapter 13 case filed during the
pendency of their Chapter 7 case.  The facts in Scruggs are distinguishable from the matter before the Court
because the debtors in Scruggs were attempting to maintain two bankruptcy cases at the same time.
Furthermore, the Court found that the debtors were attempting to delay secured creditors from foreclosing on
encumbered properties that debtors intended to, but did not, keep current during the administration of their
Chapter 7 case.  Finally, there were allegations raised in Scruggs by the United States Trustee of concealment
of assets by debtors.

the Supreme Court in <u>Johnson</u>. Considering the totality of the circumstances, the Court has

no evidence of an apparent manipulation or planned sequence of filings that signal abuse or

prejudice to creditors. Furthermore, there are no indicators of bad faith or an attempted

scheme designed to accomplish an impermissible result. Therefore, in light of the

foregoing, the Court concludes that Debtors may treat their remaining debts in this Chapter

13 case. Accordingly, it is hereby

**ORDERED** that the Chapter 13 Trustee's Petition to Dismiss is denied; and it is

further

**ORDERED** that confirmation of Debtors' Chapter 13 plan will be addressed by

separate order.

**AND IT IS SO ORDERED.**

UNITED STATES BANKRUPTCY JUDGE

Columbia, South Carolina

March 29 , 2005